UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| JEFFREY A. PASQUINELLI, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:08-CV-163-TS |
| TARGET CORPORATION and ALEX MANUEL, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The Plaintiff, Jeffrey A. Pasquinelli, sued Target Corporation and one of its agents, Alex Manuel, for false imprisonment after Manuel detained the Plaintiff at a Target store in Highland, Indiana, upon accusation that the Plaintiff had left the store without paying for merchandise. Manuel was acting as a security officer for Target Corporation when he detained the Plaintiff to investigate whether he had shoplifted a compact disc. The Defendants have moved for summary judgment, arguing that their actions were authorized by the Indiana Shoplifting Detention Act (ISDA). The Plaintiff contends that whether the Defendants had probable cause to detain him, whether their actions during the detention were reasonable, and whether they followed the procedural mandates of the ISDA are genuine issues of fact that must be determined by a jury. The parties also dispute whether the Plaintiff's claim for punitive damages can survive summary judgment.

**BACKGROUND**

On April 14, 2008, the Plaintiff filed a Complaint in Lake County Circuit Court alleging that he was "detained and falsely imprisonment by Alex Manuel," who was acting on behalf of

the Target Corporation, "upon accusation that Plaintiff had stolen property belonging to Defendant." (Compl. ¶ 4.) The Plaintiff alleges that the actions of Manuel were "willful, wanton, malicious, intentional, unreasonable and unlawful," and caused the Plaintiff to suffer both physical and mental injuries. (Compl. ¶¶ 5–6.) The Plaintiff seeks compensatory and punitive damages.

On June 6, the Defendant removed the matter to federal court on the basis that there was complete diversity of citizenship between the Plaintiff and the two Defendants, and that the amount in controversy likely exceeded $75,000. On June 23, the Defendants filed their Answer.

On May 5, 2009, the Defendants filed their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. They argue that Defendant Manuel had probable cause to detain the Plaintiff, that his actions in detaining the Plaintiff and ascertaining whether he had attempted to shoplift a CD from Target were reasonable as a matter of law, and that the Defendants followed the procedures of the ISDA. Regarding the Plaintiff's claim for punitive damages, the Defendants argue that the Plaintiff has no possibility of recovery because he is not entitled to compensatory damages, a prerequisite to a claim for punitive damages. The Defendants designate the deposition of the Plaintiff and the affidavit of Manuel as evidence in support of their Motion.

On June 25, the Plaintiff filed his Response to Defendants' Motion for Summary Judgment. The Plaintiff, relying on his own deposition and a Target store receipt, contends that genuine issues of fact remain for a jury to decide. Specifically, the Plaintiff disputes that the Defendants had probable cause to detain him, that Manuel's actions throughout the detention were reasonable, or that he acted in compliance with the procedural mandates of the ISDA. In

connection with his Response, the Plaintiff moved to strike portions of Manuel's affidavit as "conclusory, speculative, self-serving statements without factual support." (Motion to Strike 1, DE 21.) The statements that the Plaintiff seeks to strike are Manuel's explanation of common shoplifting scenarios that involve the shoplifter's use of a receipt, and his conclusion that it was not unreasonable to think that the Plaintiff had attempted to steal a CD using one of these methods.

On August 10, the Defendants filed their Reply in Support of Motion for Summary Judgment, asserting that the Plaintiff did not dispute any of the operative facts, and that they are entitled to judgment as a matter of law. They also filed a Response to Plaintiff's Motion to Strike, arguing that the challenged affidavit statements were made on personal knowledge, set out facts that would be admissible in evidence, and show that Manuel is competent to testify to the matters stated therein and should thus be considered by the Court in ruling on their Motion for Summary Judgmment.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d

485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

## MOTION TO STRIKE

The Plaintiff has moved, pursuant to Federal Rule of Civil Procedure 56(e), to strike portions of Manuel's affidavit, specifically the statements contained in paragraphs 12, 13, and 14. In paragraphs 12 and 13, Manuel describes two common methods of shoplifting that involve the shoplifter's use of a store receipt. In the first scenario, a shoplifter purchases an item and obtains a receipt so that he can return to the store later with only the receipt in his possession and steal a duplicate of the item that is listed on the receipt. The shoplifter can then use the receipt as "proof" that he purchased the stolen item. The second scenario, described in paragraph 13, is referred to as a "return fraud." It also requires an original purchase, receipt, and return to the store with just the receipt. The shoplifter, instead of walking out of the store with the item

5

indicated on the receipt, takes it to the return counter and receives money back for an item that he did not purchase. In paragraph 14, Manuel states,

> With respect to this case, given the above common shoplifting scenarios, it was not unreasonable to think that Plaintiff had in fact shoplifted even though he claimed to have had a receipt for the CD at issue. For this reason, and again, based on my personal observation of Plaintiff's conduct while conducting surveillance at the Target store, I had a reasonable basis for detaining Plaintiff for suspected shoplifting from this store.

(Manuel Aff. ¶ 14.)

The Plaintiff challenges paragraphs 12, 13, and 14 of Manuel's affidavit as being unsupported by the facts. The Plaintiff argues that Manuel does not present any evidence to support a finding or conclusion that the Plaintiff used a receipt that he obtained from a previous purchase. The Plaintiff also notes that both of the shoplifting methods described in paragraphs 12 and 13 require the shoplifter to remove an item from a store shelf, but that Manuel does not state that he observed the Plaintiff remove any item from a shelf, only that he first observed the Plaintiff in the electronics department holding a compact disk near a shelf of CDs. Thus, he argues, Manuel does not provide a factual basis supporting his conclusion that the Plaintiff shoplifted using one of these two methods.

A court may only consider those parts of an affidavit that satisfy the requirements of Rule 56(e), *Adusumilli v. City of Chi.*, 164 F.3d 353, 359 (7th Cir. 1998), which requires that affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated," Fed. R. Civ. P. 56(e)(1).

Thus, one requirement is that affidavit testimony must concern matters within the affiant's personal knowledge. Fed. R. Civ. P. 56(e)(1); *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the

6

witness has personal knowledge of the matter."). "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)). Additionally, Rule 56(e) requires specificity because, absent evidence supported by specific facts, conclusory allegations by a party opposing summary judgment cannot defeat a motion for summary judgment. *Payne*, 337 F.3d at 773 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court finds that Manuel's statements about common shoplifting schemes involving the use of a receipt are properly before the Court on summary judgment. Manuel indicates in his affidavit that, as an Asset Protection Specialist for Target, he was trained to observe customers, looking for behavior routinely exhibited by shoplifters. Paragraphs 12 and 13 contain descriptions of two shoplifting schemes of which Manuel has knowledge based on his expertise and training as a security officer. Manuel does not purport, by his affidavit statements, to have any proof that the Plaintiff's receipt actually came from a previous purchase. His statements are intended to show that the mere possession of a receipt does not foreclose the possibility that someone has engaged in shoplifting. It is knowledge that would inform a reasonable security officer's decision, and the statements otherwise meet the requirements of Rule 56(e). Accordingly, the Court does not strike paragraphs 12 and 13 of Manuel's affidavit.

However, Manuel's conclusion in paragraph 14 that it was not unreasonable to believe, based on his observation of the Plaintiff, that the Plaintiff had stolen a CD from the store,

7

appears to be a legal conclusion. To the extent that Manuel purports to testify to what a person of reasonable caution would believe in the circumstances, and thus makes a conclusion regarding probable cause, the statement is not a fact. *See, e.g., Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argumentation in an affidavit may be disregarded."). If the statement is viewed for a more limited purpose—establishing that Manuel subjectively believed he had a reasonable basis for detaining the Plaintiff on suspicion of shoplifting—it is substantiated by the specific facts that Manuel provides in the affidavit. Whether Manuel was mistaken in this belief is a separate issue, and one that is not amenable to factual assertions in an affidavit.[1] Although the Court declines to strike paragraph 14, it does so with the understanding that it may only be considered as a statement of Manuel's subjective beliefs, which may or may not be relevant to any issue presented to the Court at this stage of the proceedings.

**STATEMENT OF FACTS**

On April 15, 2006, fifty-three year old Jeffrey Pasquinelli drove with his teenage son, Angelo, to the Target store located in Highland, Indiana. It was the day before Easter, and the Plaintiff wanted to buy items to place in his two sons' Easter baskets. Angelo remained in the car while his father shopped. The Plaintiff purchased several items, including a CD entitled The Notorious B.I.G, which he intended to give to Angelo. His sales receipt listed the item as "RB

---

[1] Likewise, the Plaintiff's argument that Manuel did not actually see the Plaintiff remove the CD from a store shelf, and thus had no basis in fact to suspect the Plaintiff of shoplifting under either of the scenarios presented in his affidavit, is argument better left to the analysis of probable cause.

NOTORIOUS" for $14.99.

When the Plaintiff got to his car, he put the bags of merchandise in the trunk, except for the CD, which he gave to Angelo. Because Angelo stated that he already had the Notorious CD at home, the Plaintiff told Angelo that they would simply return it and get another item. They re-entered the store together and walked to the customer service counter with the CD and the receipt, and asked to exchange it for another item. The employee at the service counter noted that the cellophane covering on the CD was slit, and told the Plaintiff that he could not return an opened CD. The Plaintiff had not noticed at the time of sale that there was a two-inch razor cut in the plastic covering of the CD. The Plaintiff asked to speak to a manager, who also refused to accept the return despite the fact that the manufacturer's tape used to seal the CD case was still fully intact.

Unable to return the CD, the Plaintiff and Angelo walked around the store looking for something else to buy for Angelo, with the Plaintiff still holding the CD and the receipt in his hand. They walked to the electronics section of the store and looked through various CDs and movies, but Angelo did not find anything that he wanted his father to purchase. They also walked around in the toy and sporting goods sections. Angelo found nothing that interested him, and asked for the keys so he could wait in the car. Angelo left the store without incident.

After Angelo left, the Plaintiff continued to look around the store with the CD and receipt in his hand. The Plaintiff decided not to purchase anything, and left the store. Just as he reached the parking lot, three Target employees confronted him, with one of them stating that he needed to come back inside the store. He asked why, and an employee told him it was believed that he had stolen the CD that he was carrying in his hand. The Plaintiff explained that he did not steal

9

it, and had a receipt because he bought the CD just a little while ago. The employee said he still had to come back into the store. The Plaintiff went back inside the store and was directed to an office. Alex Manuel, an Asset Protection Specialist for Target, was inside the room. Manuel asked the Plaintiff to have a seat and then asked for his identification. The Plaintiff produced his Indiana driver's license. Manuel was looking at a computer or television screen, but the Plaintiff could not see what was on the screen.

The Plaintiff showed Manuel the receipt and explained that he did not steal the CD. He testified as follows in his deposition:

> Well, I told him, Hey I got the receipt. Anybody can see that I paid for the merchandise just a half hour ago. There's the time on there. There's the date on it. There's all the stuff that I bought and on the bottom of it or in the middle of it there's Notorious B.I.G. that I paid for $14.99. There's the receipt and there's the merchandise. The alarm didn't go off when I went through the door. I wasn't trying to conceal it when I walked out. If I was trying to steal something wouldn't it make sense that I had it down my pants or under my shirt or that I was trying to hide it. No, I wasn't. I came back in here on my own accord because I had nothing to hide. So don't know what the problem was.

(Pl.'s Dep. 61–62.) According to the Plaintiff, Manuel's response was to tell him that the receipt "doesn't mean shit, sir." (Pl.'s Dep. 60–61.) Manuel said that he would have to watch the surveillance tape, and when he was done, he would let the Plaintiff know what was going on. Manuel also took a picture of the Plaintiff, his driver's license, the CD, and the receipt.

In his training and experience as a security officer, Manuel was aware of shoplifting schemes that could be carried out with the use of a receipt. On that day, he had been watching the sales floor at the Highland Target store by means of video surveillance when he observed the Plaintiff standing in the electronics section of the store, near a shelf containing CDs. The Plaintiff was holding a CD. Manuel observed the Plaintiff walk around the store with the CD in

10

his hand, and then saw him walk toward the front exit and continue past the cash registers without paying for the CD. Manuel believed that the Plaintiff was attempting to shoplift the CD, and informed the security guard stationed at the front door. To further investigate, Manuel had the Plaintiff come to the detention room located in the security office, began interviewing the Plaintiff, filling out an incident report, and reviewing the video surveillance footage.

After Manuel watched the tape for awhile, but had not made any conclusions, the Plaintiff asked what was going on and whether he was under arrest. Manuel answered that he was not, at that time, under arrest. According to the Plaintiff, the following exchange led to his being handcuffed to a chair:

> I says, Well if I'm not being arrested then I'm going to leave. And he says, Well I wouldn't advise that sir. I said, Well am I being arrested or not because if I'm not being arrested then you shouldn't be holding me. And he goes, No, you're not being arrested. I said, Well then I'm walking. He goes, I wouldn't advise that, sir. I says, Well I am. I got up to walk. He had those three other guys that were in the room with him, they all jumped on top of me, you know, jumped me. Jumped on top of me. Grabbed by arms. Pulled my arms behind my back. They cuffed me and then they had another pair of handcuffs. They cuffed those handcuffs to a chair so I couldn't get up from the chair.

(Pl.'s Dep. 62–63.) Manuel continued reviewing footage of the surveillance footage. After about an hour, a Highland Police Officer arrived and talked to Manuel outside of the Plaintiff's presence. Manuel re-entered the room, uncuffed the Plaintiff, and told him that he was free to leave. However, he did not allow the Plaintiff to keep the CD, and told him that he was not allowed back on Target's premises and that his picture would be posted in the office. The Plaintiff left the store and returned to his car where his son was waiting. The Plaintiff was not charged with shoplifting or any other crime.

**DISCUSSION**

The Plaintiff claims that Manuel's detention constitutes false imprisonment. Under Indiana law, false imprisonment is "the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins*, 788 N.E.2d 1260, 1264 (Ind. Ct. App. 2003).[2]

In defense of this claim, the Defendants assert immunity under the ISDA, which gives "[a]n owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft" limited authority to detain the person suspected of theft. Ind. Code § 35-33-6-2(a). Once this authority is triggered, the store agent may do the following:

> (A) detain the person and request the person to identify himself or herself;
> (B) verify the identification;
> (C) determine whether the person has in the person's possession unpurchased merchandise taken from the store;
> (D) inform the appropriate law enforcement officers; and
> (E) inform the person's parents or others interested in the person's welfare that the person has been detained.

Ind. Code § 35-33-6-2(a)(1)(A)–(E). The ISDA is "designed to provide some measure of immunity from liability for a merchant whose agent detains someone suspected of theft." *Haltom v. Bruner & Meis, Inc.*, 680 N.E.2d 6, 9 (Ind. Ct. App. 1997).

"For purposes of the shoplifting statute, probable cause is cause to believe a specific person had or was committing a theft of the merchant's property." *Duvall v. Kroger Co.*, 549 N.E.2d 403, 407 (Ind. Ct. App. 1990); *see also Haltom v. Bruner and Meis, Inc.*, 680 N.E.2d 6, 9 (Ind. Ct. App. 1997) (stating that the ISDA permits a "merchant's agent to effect a warrantless

---

[2] Both parties cite to Indiana law as governing the substantive issues in this diversity action.

arrest or detention where the facts and circumstances known to the agent at the time of the arrest would warrant a person of reasonable caution to believe the arrestee has committed or is committing a theft on or about the store"). If probable cause is present the merchant's detention of the suspect is lawful, and "[l]awful detention cannot constitute false imprisonment." *Duvall*, 549 N.E.2d at 407; *see also Wal-Mart Stores, Inc. v. Bathe*, 715 N.E.2d 954, 957 (Ind. Ct. App. 1999) (establishing that a "merchant is not liable for claims of false imprisonment, false arrest, and malicious prosecution where the conduct of the employer is authorized by the Act"); Ind. Code § 35-33-6-4 (stating that a civil action against an owner or agent of a store "may not be based on a detention that was lawful under section [35-33-6-2]").

Although the issue of whether probable cause existed is normally an issue for a jury's determination, if the facts are undisputed it is for the court to determine as a matter of law. *Duvall*, 549 N.E.2d at 405–06; *Banish v. Locks*, 414 F.2d 638, 641 (7th Cir. 1969) (explaining that if the facts or circumstances surrounding an arrest are not in dispute, the question of probable cause is a question of law for the court); *cf. Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) ("[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)).

Although the Plaintiff denies that he committed any theft, his version of events does not contradict the Defendants' version with regard to what Manuel observed that caused him to suspect the Plaintiff of shoplifting and decide to detain him. Manuel was watching a television monitor that broadcasted images of the sales floor when he observed the Plaintiff standing by a

13

shelf with CDs on it. The Plaintiff had a CD in his hand, which he then carried throughout the store. When the Plaintiff left the store, he did not stop at any register to pay for the CD. A person of reasonable caution could reasonably conclude that the Plaintiff had removed the property of Target "from any place within the business premises at which it was displayed or offered to a point beyond that at which payment should be made." Ind. Code § 35-43-4-4(c) (describing evidence that "constitutes prima facie evidence of intent to deprive the owner of the property of a part of its value and that the person exerted unauthorized control over the property"). Probable cause did not require Manuel to actually observe the Plaintiff remove the CD from the shelf. *See Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."); *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000) ("Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime . . . [s]o long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists"). A common sense view of the circumstances would suggest that the Plaintiff failed to pay for merchandise that he obtained from inside the store when he walked out of the store with the CD in his hand without going through a check out line and stopping at a cash register.

The Plaintiff argues that because he did not attempt to conceal the CD, the shoplifting detection alarms were not triggered upon his exit, and he immediately produced a receipt for the CD, a person of reasonable caution (and a jury) could reasonably conclude that he had purchased the CD. The fact that the anti-theft alarm did not sound does not negate probable cause in this

case because there is no evidence indicating the significance of this fact. None of the evidence in the record addresses, generally, what triggers the shoplifting alarms at the Target location at issue. Neither is there any designated evidence indicating, specifically, that an unpurchased CD will trigger the alarm while a purchased CD will not. Although concealing an item is prima facie evidence of intent to deprive the owner of its value and exert unauthorized control over the property, it is not necessary to establish probable cause, which is based on a totality of the circumstances. As Manuel stated in his affidavit, it is not uncommon for a shoplifter to purchase an item and obtain a receipt so that he can enter the store a second time to steal an identical item. The receipt will then act as the shoplifter's proof that he did not steal the item. In this scenario, there is both no need to conceal the item that the shoplifter has pretended to already purchase, and the receipt becomes a part of the shoplifting scheme, thus losing its value as evidence to dispel a suspicion of theft. The Plaintiff has not designated any evidence that would support a conclusion that Manuel was aware of facts that would negate probable cause, such as the fact that he already had the CD in his hand when he re-entered the store, or that he first attempted to exchange it at the Service Counter before walking to the electronics section. *Cf. Hogue v. City of Fort Wayne,* 599 F. Supp. 2d 1009, 1025 (N.D. Ind. 2009) (holding that additional information learned by a loss prevention officer at retail store, which suggested that the plaintiff was merely exchanging some merchandise, created an issue of fact regarding the reasonable inferences to be drawn from suspicious behavior he observed earlier on a security camera). Accordingly, no reasonable jury could conclude that Manuel lacked probable cause to detain the Plaintiff.

However, the fact that probable cause existed "does not mean that the test of reasonableness in manner and time has been met." *Dietz v. Finlay Fine Jewelry Corp.*, 754

N.E.2d 958, 968 (Ind. Ct. App. 2001) ("An originally reasonable detention may be denied statutory protection if the actions taken in connection with the detention become unreasonable." (citing 32 Am. Jur. 2d, False Imprisonment § 80 (1995)). The ISDA states that any detention must: "(1) be reasonable and last only for a reasonable time; and (2) not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever first occurs."
Ind. Code § 35-33-6-2(c); *see also Wal-Mart Stores, Inc. v. Bathe*, 715 N.E.2d 954, 962 (Ind. Ct. App. 1999) (stating that "[t]he boundaries within which merchants must conduct themselves during such detainments and searches are those of reasonableness").

In *Bathe*, Wal-Mart employees detained the plaintiff for fifteen minutes and searched the contents of her purse after the anti-theft alarm sounded as she attempted to exit the store with a bag of merchandise. The plaintiff sued Wal-Mart, claiming that the duration and the manner of the search were unreasonable. In determining whether the facts of the case required that the issue of Wal-Mart's reasonableness be decided by a jury, the court was mindful of the purpose of the ISDA and the entities and interests it was intended to protect, and ultimately granted summary judgment for Wal-Mart. In doing so, it noted that "reasonableness is generally a question for the factfinder to decide," but concluded that "if a jury were permitted to decide that Wal-Mart's actions in the instant case were unreasonable, then the immunity provided by the Act would be illusory indeed." *Bathe*, 715 N.E.2d at 962. While *Bathe* is distinguishable on its facts, this Court takes heed of its reasonableness analysis. This Court also notes that in another Indiana case addressing the reasonableness of a detention under the ISDA, the court stated that summary judgment for the merchant was not appropriate because the designated evidence did not "conclusively establish the reasonableness of the detention," and the court could not determine

16

whether the ISDA rendered the defendants immune for false imprisonment. *Dietz*, 754 N.E.2d at 968.

The Plaintiff argues that the manner in which he was detained was unreasonable, pointing specifically to being handcuffed to a chair as a manner of his detention about which reasonable minds could draw different conclusions. The record indicates that early in the detention, the Plaintiff showed the Defendant his receipt for the CD and explained that he had purchased it about a half-hour earlier. However, this, standing by itself, did not require Manuel to end the detention or render the continued detention unreasonable. Even after being presented with the receipt, Manuel could still reasonably harbor a reasonable suspicion that the Plaintiff brought the receipt into the store without the accompanying merchandise, and then picked up a second CD with the intention of leaving the store without paying for it. Therefore, Manuel reviewed footage from the video surveillance to investigate what happened on the sales floor and determine whether the Plaintiff had in his possession unpurchased merchandise. The Defendants maintain that the video surveillance did not immediately prove conclusive, at least the portion that Manuel reviewed. The Plaintiff contends that after Manuel reviewed the video footage and took photographs of the Plaintiff, his driver's license, and the CD and receipt, Manuel still could not provide the Plaintiff with any explanation about why he believed the Plaintiff had stolen the CD. The Plaintiff confirmed that he was not under arrest and got up to leave, against Manuel's advice. As he did so, three employees jumped on him, handcuffed him, and used a second pair of handcuffs to keep him in the chair, where he stayed for over an hour until a Highland Police officer arrived.

The Court cannot determine, on the basis of the record before it, that jumping on the

17

Plaintiff and handcuffing him (for an hour) was reasonable as a matter of law and thus covered by the immunity granted by the ISDA. At some point, a merchant's detention becomes unreasonable. Whether that point was reached in this case is a matter best left to fact finders who have an opportunity to hear a full account of the events and assess the credibility of witnesses. The Plaintiff has placed enough evidence in the record to permit a jury, if it accepted his version of events, to conclude that the Defendants acted unreasonably when they exhausted their investigative efforts, yet continued to detain the Plaintiff in handcuffs until a police officer arrived. The Defendants maintain that the detention was reasonable throughout because Manuel was still attempting to ascertain what happened on the sales floor through his review of the surveillance footage, and that the Defendants were specifically authorized by the ISDA to take this action. However, according to the Plaintiff's version of events, he entered the store with the CD and the receipt, went to the Customer Service Desk, and only then proceeded to the electronics section of the store. The Plaintiff's testimony creates a genuine issue of fact regarding what the video footage revealed to Manuel. A jury, if it accepted the Plaintiff's account, could conclude that it was unreasonable to detain the Plaintiff in the manner that the Defendants did simply to continue reviewing footage that should have easily dispelled Manuel's suspicion that the Plaintiff had stolen the CD.[3] Thus, there is a genuine issue of fact whether Manuel's actions were part of a reasonable attempt to ascertain whether the Plaintiff had unpurchased merchandise in his possession, or whether he continued to keep the Plaintiff in handcuffs despite having evidence that dispelled his suspicions. The Defendants also argue that

---

[3] Neither of the shoplifting schemes that Manuel described in his affidavit could be carried out by a person who entered a store with the merchandise reflected on the receipt. Thus, a jury could conclude based on the record created at the summary judgment stage that Manuel had only to go back to the Plaintiff's entry into the store to confirm or dispel his suspicions.

it is a Target Corporation policy to wait until local law enforcement arrives to uncuff any individual that has been handcuffed on its premises. However, the fact that it was a corporate policy does not, as a matter of law, establish that it was reasonable.

The Court cannot conclude, based on the record before it and considering the facts in a light most favorable to the Plaintiff, that the Indiana legislature intended to immunize a merchant under the circumstances of this case in order to protect its property rights. This case presents facts upon which a jury could, without rendering the immunity provided by the ISDA illusory, conclude that the merchant's actions went beyond those that inevitably cause some level of embarrassment and must be "tolerated in order to protect a merchant's property rights," *Bathe*, 715 N.E.2d at 961, and became unreasonable. Accordingly, the Defendants are not entitled to summary judgment on the Plaintiff's claim for false imprisonment.

The Defendants' request for summary judgment on the Plaintiff's claim for punitive damages is dependent on receiving summary judgment on the false imprisonment claim. Because genuine issues of material fact remain as to the reasonableness of the detention, the argument in favor of summary judgment on the punitive damages claim fails as well.

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment [DE 11] and the Plaintiff's Motion to Strike [DE 21] are DENIED. The Court confirms the telephonic status conference set for December 21, 2009, during which time the Court will set a date for trial.

SO ORDERED on December 15, 2009.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION